**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jason Quade,<br>Plaintiff,<br>v.<br>American Airlines Incorporated, *et al.*,<br>Defendants. | No. CV-26-00337-PHX-JJT<br>**ORDER** |

At issue is Defendant International Association of Machinists and Aerospace Workers, Air Transport District Lodge 142, and IAMAW Local Lodge 2559's (collectively, Defendant Union) Motion to Dismiss the First Amended Complaint (Doc. 28, Union MTD) and Defendant American Airlines Incorporated's Motion to Dismiss the First Amended Complaint (Doc. 30, American MTD) and Motion for Extension of Time to File Answer (Doc. 27). Plaintiff opposed both Motions to Dismiss (Doc. 32, Opp. to Union; Doc. 34, Opp. to American), and Defendants replied (Doc. 33, Union Reply; Doc. 35, American Reply). After review and for the reasons set forth below, the Court now grants both Motions to Dismiss. (Docs. 28, 30.) The Court also denies as moot Defendant American's Motion for Extension of Time to File Answer. (Doc. 27.)

## I. BACKGROUND

On January 20, 2026, Plaintiff filed a Complaint alleging violations of the Railway Labor Act (RLA) of 1945 (45 U.S.C. 151 *et seq.*) for "breach of the collective bargaining agreement and breach of the duty of fair representation," as well as related Arizona state

law claims. (Doc. 1.) The claims related to a May 2024 incident in which Plaintiff, an employee of Defendant American and member of Defendant Union, was "required by American Airlines to take a non-DOT drug and alcohol test after a minor workplace incident." (Doc. 1.) After the test was allegedly "mishandled and initially reported as positive," Plaintiff "requested representation and assistance" from Defendant Union. (Doc. 1.) Plaintiff alleges the Union refused to help, and that working conditions then became "intolerable" despite repeated reports to Defendant American, resulting in Plaintiff's ultimate resignation "under protest" in August 2025. (Doc. 1.)

After service, Defendant American moved for a more definite statement. (Doc. 21.) Plaintiff did not file opposition, and the Court granted the motion. (Doc. 23.) On April 16, 2026, Plaintiff filed the First Amended Complaint, clarifying his allegations and expanding his claims. (Doc. 25, FAC.)

The FAC alleges Plaintiff worked for Defendant American for over 25 years as a "Crew Chief-Material Logistics Specialist" (FAC ¶ 11), a position governed by a Collective Bargaining Agreement (CBA) between Defendant American and Defendant International Association of Machinists and Aerospace Workers (FAC ¶ 12). In May 2024, Defendant American ordered Plaintiff to submit a drug and alcohol test. (FAC ¶ 13.) The test came back positive, a result that Plaintiff believes could have occurred because of his "valid medical prescription." (FAC ¶¶ 13–15.) Plaintiff then requested that Defendant Union investigate the erroneous test; Defendant Union did not. (FAC ¶¶ 15–16.) After Plaintiff "reversed the May 2024 test result himself by obtaining the information and documentation necessary to correct the reported outcome," he alleges the Union informed him of the correction and permitted him to return to work. (FAC ¶ 17–18.) At that point, Plaintiff again requested the Union investigate or file a grievance against Defendant American regarding testing protocols. (FAC ¶¶ 19-20.) Plaintiff alleges he contacted Defendant American himself, requesting they conduct an investigation; Defendant American took no action. (FAC ¶¶ 21–22.) Finally, nearly a year later, in June 2025, Plaintiff requested an urgent meeting with Defendant Union regarding "intolerable

working conditions," but received no reply. (FAC ¶¶ 23–24.) As a result, Plaintiff alleges he "resigned under protest, asserting constructive discharge." (FAC ¶ 25.) After resignation, Plaintiff alleges that Defendant American caused his unemployment benefits to stall by errantly listing his post-work separation status (FAC ¶¶ 26–30), and that Defendant American also failed to provide him with an accounting of his "profit-sharing eligibility status" (FAC ¶¶ 31–34).

Plaintiff brings six claims against Defendant American and two against Defendant Union. (FAC ¶¶ 35–62.) Against Defendant American, Plaintiff claims a violation of the CBA under the RLA (45 U.S.C. § 151 *et seq.*), constructive discharge (A.R.S. § 23-1502), wrongful termination (A.R.S. § 23-1501(A)(3)), a violation of Arizona's drug testing statutes (A.R.S. § 23-493 *et seq.*), interference with unemployment benefits (A.R.S. § 23-785), and declaratory relief (28 U.S.C. §§ 2201–2202). Against Defendant Union, Plaintiff claims a violation of the Duty of Fair Representation (DFR) under the RLA (45 U.S.C. § 151 *et seq.*) and declaratory relief (28 U.S.C. §§ 2201–2202). Plaintiff requests relief in the form of compensatory, punitive, and statutory damages, back and front pay, lost benefits, and declaratory judgment regarding the parties' duties and obligations under the RLA, the CBA, and applicable state law.

## II. LEGAL STANDARD

### a. Dismissal for Lack of Subject Matter Jurisdiction (FRCP 12(b)(1)), Failure to State a Claim (FRCP 12(b)(6))

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424

F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990).

Federal Rule of Civil Procedure 12(b)(6), on the other hand, is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

. . . .

. . . .

## III. ANALYSIS

### a. Plaintiff's Breach of the CBA Claim (Count I) against Defendant American is dismissed for lack of jurisdiction.

Plaintiff's first allegation concerns the obligation Defendant American owed Plaintiff "to handle matters arising under the [CBA] in a fair, timely, and good-faith manner." (FAC ¶ 36.) Specifically, Plaintiff alleges Defendant American failed to investigate his reports about the May 2024 drug test and the June 2025 intolerable working conditions. (FAC ¶¶ 21–25.) Defendant American raises two arguments about the claim in its motion: (1) the claim falls outside the Court's jurisdiction because it is a "minor dispute" and (2) the claim is time barred. (American MTD at 6–8.) Defendant American points to caselaw holding that minor disputes lack jurisdiction in federal court, and instead require resolution "through the CBA's established grievance mechanism." (American MTD at 6 (citing *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 917 (9th Cir. 2018)).) Plaintiff rebuts that Defendant American misconstrues the nature of his claim, and that federal courts have jurisdiction over "hybrid" RLA claims. (Opp. to American at 3.) In reply, Defendant American stresses that Plaintiff cannot plead a hybrid claim because he fails to adequately plead both sides of the claim: (1) the "actual breach of the CBA" by the employer *and* (2) the "breach of the Association's DFR in handling his grievance." (American Reply at 3 (citing *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 564 (1990)).) The Court agrees with Defendant American.

As a general matter, Congress passed the RLA to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (internal citation omitted). The RLA expressly seeks to provide for the "prompt and orderly settlement of all disputes growing out of grievances" about "working conditions." 45 U.S.C. § 151a. That is why the RLA has long-established, as early as 1926, "mandatory arbitral mechanisms." *Hawaiian Airlines, Inc.*, 512 U.S. at 252; *see also Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987).

Against this backdrop, Defendant American correctly points out that the RLA demarcates two classes of disputes: "major" and "minor." *Hawaiian Airlines, Inc.*, 512 U.S. at 252–53. Major disputes relate to "the formation of collective bargaining agreements or efforts to secure them," whereas minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Id.* (cleaned up). In other words, "major disputes seek to create contractual rights, minor disputes to enforce them." *Id*. (internal citations omitted). Federal courts maintain jurisdiction over the major disputes, but not over the minor ones, which instead "must be addressed through the CBA's established grievance mechanism . . . ." *Alaska Airlines, Inc.*, 898 F.3d at 917.

A federal court may nonetheless have jurisdiction over a minor dispute where it is attached to a DFR claim (together, called a hybrid claim). Minor disputes embedded in hybrid claims may escape jurisdictional foreclosure because the judiciary recognizes that the ordinary rules governing minor disputes inject an "unacceptable injustice" into cases where "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983). In such cases, federal court jurisdiction is warranted over the entire affair because the "two claims are inextricably interdependent." *Id*. But contrary to Plaintiff's argument, hybrid claims were designed as a failsafe if the arbitration process fails, not as a means to freely circumvent arbitration. The Court does not read *DelCostello* as providing plaintiffs with a shibboleth, steering them to safe passage in federal courts, because doing so would result in the judicial rejection of Congress's clear intent to compel minor disputes promptly into arbitration. *See id.*

Returning to the instant action, given that Plaintiff's RLA claim against Defendant American is a minor dispute, it can theoretically be saved from jurisdictional foreclosure if the Court found that the other half of the hybrid claim—the DFR claim—survives Defendant Union's motion to dismiss. Here, as discussed *infra*, because the Court finds the

DFR claim against Defendant Union time barred, the Court therefore finds it has no jurisdiction over the RLA claim against Defendant American. The claim is dismissed.[1]

**b. Plaintiff's Breach of the DFR Claim is dismissed as time barred (Count II).**

Plaintiff next alleges that Defendant Union "owed Plaintiff a duty of fair representation," but breached that duty in failing to respond to his requests for assistance. (FAC ¶¶ 40–41.) Plaintiff alleges that Defendant Union "did not request information, did not investigate the matter, and took no action in response to Plaintiff's disclosure" of the false positive. (FAC ¶ 16.) Following reversal of the drug test, Plaintiff further alleges he "requested that the Union investigate the circumstances of the initial test and consider filing a grievance regarding testing protocols." (FAC ¶ 19.) No investigation or grievance occurred, despite Plaintiff allegedly contacting local, district, and international officials between "May 2024 and December 2025." (FAC ¶ 20.) Defendant Union responds that, even taken as true, the claim is both time barred and fails to plead necessary elements. (Union MTD at 6–19.) Defendant Union argues a six-month statute of limitations applies to DFR claims, and that the clock begins to run when "'the employee learns or should have learned of the union's decision' not to pursue a grievance." (Union MTD at 6 (citing *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986)).) Plaintiff opposes, arguing his claim "encompass[es] a sustained pattern of union inaction through August 2025, culminating in Plaintiff's constructive discharge," not simply a single instance of inaction. (Opp. to Union at 3.) And because constructive discharge claims do not run the clock until "the date of resignation," his claim is not time barred. (Opp. to Union at 3 (citing *Green v. Brennan*, 578 U.S. 547, 564 (2016)).) Defendant Union has the winning argument.

. . .

---

[1] Futility is a closely related exception to the general jurisdictional rule. *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 606 (9th Cir. 2019). To qualify for the exception, a plaintiff must plead that the employer and union "acted in concert" against him, such that "arbitration before a panel of employer and union representatives would be absolutely futile." *Id.* (internal citation omitted). Plaintiff pleads no such facts in the FAC and does not raise the argument in opposition to either motion to dismiss.

The Court discerns two distinct issues presented by the briefing: first, *what* is the precise breach alleged in the FAC (*i.e.*, the failure to investigate/grieve *or* the failure to assist with the intolerable working conditions culminating in Plaintiff's constructive discharge) and second, *when* did that breach occur?

On the first issue, Plaintiff argues in opposition that Defendant Union breached the DFR by the "sustained pattern of union inaction," culminating in the constructive discharge due to intolerable working conditions. (Opp. to Union at 3–4.) But Defendant Union correctly flags this as a bait-and-switch. (Union Reply at 5–6.) Plaintiff's FAC alleges inaction following the drug test, not inaction following a report of intolerable working conditions or constructive discharge. (FAC ¶¶ 16, 19.) Indeed, the language in the FAC clearly alleges that "Plaintiff requested that the Union investigate the circumstances of the *initial test* and consider filing a grievance *regarding testing protocols*." (FAC ¶ 19 (emphasis added).) It continues, "[b]etween May 2024 and December 2025, Plaintiff contacted local, district, and international union officials seeking assistance or intervention. No investigation was conducted, and no grievance process was initiated." (FAC ¶¶ 19–20.) Only after these paragraphs does the FAC allege, for the first time, the intolerable working conditions, and those allegations are against Defendant American, not Defendant Union. (FAC ¶¶ 23–25.) Plaintiff never then alleges he told Defendant Union officials about the intolerable working conditions. The duty of fair representation therefore could not have been triggered as to those conditions. Furthermore, even had Plaintiff told Defendant Union, Plaintiff fails to provide even an iota of specificity about the intolerable conditions. As a result, Defendant Union and the Court can only speculate as to what these conditions may have entailed. The Court thus concludes Plaintiff alleges a breach of the DFR only as to the failure to investigate/grieve the drug test, not as to the constructive discharge.[2]

. . .

---

[2] Plaintiff's reliance on *Green* is inapposite. (Opp. to Union at 3.) *Green* held that constructive discharge claims accrue against employers upon notice of resignation in Title VII discrimination cases. *See Green v. Brennan*, 578 U.S. 547, 564 (2016). This is not a Title VII case, nor does Plaintiff bring a constructive discharge claim against Defendant Union.

On the second issue, the question becomes, at what point did the clock begin to run on the alleged failure to investigate/grieve the drug test? At the outset, note that the parties do not dispute that RLA cases apply a six-month limitation period. *See, e.g., Kelly v. Burlington N. R. Co.*, 896 F.2d 1194, 1197 (9th Cir. 1990) (holding the six-month limitations period applies to actions arising under the RLA, including in hybrid actions). Given Plaintiff filed his initial complaint (Doc. 1) on January 20, 2026, in order for his DFR claim to survive against Union Defendant, the clock needed to start on July 20, 2025 or later. It did not.

As Defendant Union correctly argues, the clock started when Plaintiff "learn[ed] or should have learned of the union's decision" not to pursue a grievance. *Galindo*, 793 F.2d at 1509. In this case, that was in June 2024. According to the FAC, Plaintiff first contacted the Union about the drug test issue *before* Plaintiff "reversed the May 2024 test result himself." (FAC ¶¶ 15–17.) Therefore, it is reasonable to conclude Plaintiff should have known within a number of days, at most a few weeks or a month, that the Union had declined to act. *See Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985) (citing *Hungerford v. United States*, 307 F.2d 99, 102 (9th Cir.1962), *overruled on other grounds*, *Ramirez v. U.S.*, 567 F.2d 854 (9th Cir.1977)). But, even if this Court found Plaintiff's request for investigation issued after the reversed drug test, rather than before, the result remains unchanged. The FAC alleges Plaintiff requested investigation from Defendant Union "following the reversal." (FAC ¶ 17.) Although "following" does not denote a specific quantum of time, the Court infers from the FAC's chronological presentation that Plaintiff contacted Defendant *soon after* the reversal. (*See* FAC ¶ 17–25.) This finding is buttressed by the fact Plaintiff alleges he requested assistance from Defendant Union repeatedly about that test "[b]etween May 2024 and December 2025." (FAC ¶ 20.) Given those requests were repeated, the Court concludes that Plaintiff himself knew that Defendant Union had declined to act—for he would only *repeat* his requests if aware that earlier pleas remained unheeded.

. . .

Plaintiff nonetheless argues the clock should not start because the "sustained pattern of union inaction" amounts to a continuing breach. (Opp. to Union at 3.) But Ninth Circuit precedent has the argument on all fours: "[t]his continuing breach theory [of DFR claims] finds no support in the case law, and it contradicts one of the premises of the hybrid § 301 suit."[3] *Harper v. San Diego Transit Corp.*, 764 F.2d 663, 669 (9th Cir. 1985) (finding plaintiff's claim accrued the day he received notice the union declined to pursue arbitration). Thus, by June 2024 Plaintiff knew or should have known his grievance was not being pursued, meaning Plaintiff had until December 2024 to file suit. His January 2026 suit is therefore far too late. Plaintiff does not plead equitable tolling, and the Court sees no grounds for such tolling in the pleadings. Therefore, the claim is dismissed as time barred.

**c. Plaintiff's state law claims (Counts III, IV, V, and VI) are dismissed for lack of subject matter jurisdiction.**

In light of the Court's dismissal of all federal claims, the Court no longer maintains federal question jurisdiction over the suit. And Plaintiff does not plead diversity jurisdiction, failing to mention in the FAC defendants' residency or the amount-in-controversy. Therefore, the Court dismisses the remaining state law claims for lack of subject matter jurisdiction.

Even if the Court did find jurisdiction, the state law claims face significant hurdles. The constructive discharge claim (Count III) will struggle because it "does not afford an employee a remedy," it simply "transform[s] a resignation into a discharge," meaning that an employee must also "prove a common-law or statutory claim for wrongful termination." *Peterson v. City of Surprise*, 418 P.3d 1020, 1023 (Ct. App. 2018) (internal citations omitted). Although Plaintiff does plead wrongful termination (Count IV), he does so deficiently, failing to allege its basic elements. *See* A.R.S. § 23-1501(A)(3). Namely,

[3] "§ 301" refers to 29 U.S.C. § 185 of the Labor Management Relations Act (LMRA), relevant here because "[t]he Supreme Court has repeatedly instructed that RLA preemption" is "virtually identical [to] preemption under section 301 of the [LMRA]." *Alaska Airlines, Inc.*, 898 F.3d at 914 (cleaned up).

Plaintiff provides no detail regarding Defendant American's conduct that caused the "intolerable working conditions." (FAC ¶ 23.) The Arizona drug testing claim (Count V) is also deficient, as Plaintiff does not state with any semblance of clarity as to how Defendant American violated the statute. *See* A.R.S. § 23-493 *et seq*. Nor does Plaintiff grapple with the statute's express limitations on causes of action. A.R.S. § 23-493.06 ("No cause of action is or may be established for any person against an employer who has established a policy and initiated a testing program in accordance with this article . . . ."). Finally, Plaintiff's claim of interference with unemployment benefits (Count VI) is feckless given it is a criminal statute that does not give rise to a civil cause of action. A.R.S. § 23-785. In opposition, Plaintiff attempts to amend his pleading to another criminal statute. Opp. to American at 4; A.R.S. § 23-786. The Court still does not see a civil cause of action. *See Barnett v. Bashas, Inc.*, 2005 WL 8161236, at *4 (D. Ariz. Sept. 30, 2005).

**d. Plaintiff's claim for Declaratory Relief (Count VII) is dismissed to the extent it pleads a separate claim.**

Plaintiff's claim for Declaratory Relief (Count VII) is dismissed because it is a prayer for relief, not a separate claim. 28 U.S.C. §§ 2201–02. It does not give rise to civil liability. *Id*. The claim is therefore dismissed.

**IT IS THEREFORE ORDERED** granting the Motions to Dismiss of Defendant Union (Doc. 28) and Defendant American (Doc. 30) as to the First Amended Complaint (Doc. 25).

**IT IS FURTHER ORDERED** denying as moot Defendant American's Motion for Extension of Time to File Answer. (Doc. 27.)

**IT IS FURTHER ORDERED** directing the Court to close this matter.

Dated this 20th day of October, 2026.

Honorable John J. Tuchi
United States District Judge